## JAGERISKEY v. DETROIT UNITED RAILWAY.

1. TRIAL—CONDUCT OF COURT — IMPROPER REMARKS —WITNESSES.
   Prejudicial error is committed in a trial of a negligence case by the trial judge remarking in the presence of the jury that plaintiff's views relative to faith healing were not religion and too "fakey," and such remarks constituted improper comment on plaintiff's religious opinions.

2. SAME — NEGLIGENCE — CARRIERS — PERSONAL INJURIES — DAMAGES.
   It is the duty of the trial court to instruct the jury concerning the measure of damages in an action against a street railway company for negligent injuries to a passenger; and the requirement is not met by a charge that the damages were entirely for the determination of the jury.

3. SAME.
   Plaintiff was entitled to have a requested instruction given, that the amount of damages must be such sum as would make her whole or compensate her for such injuries as they might find she had suffered, or would suffer in the future, as a result of defendant's negligence.

Error to Wayne; Donovan, J. Submitted November 17, 1910. (Docket No. 97.) Decided December 7, 1910.

Case by Anna Jageriskey against the Detroit United Railway for negligent injuries to her person. A verdict and judgment of $100 damage is reviewed by plaintiff on writ of error. Reversed.

*William Van Dyke*, for appellant.

*Corliss, Leete & Joslyn* (*A. B. Hall*, of counsel), for appellee.

BIRD, C. J. This is a personal injury case, in which plaintiff recovered a judgment of $100 in the Wayne circuit court. On account of the inadequacy of the judgment she brings the case to this court for review.

It was the claim of plaintiff that she was a passenger on

one of defendant's cars in the city of Detroit, and when she was in the act of alighting therefrom, at the intersection of Jefferson and Beauford streets, the car suddenly started and threw her to the ground with such force that it injured her back and side; that she was laid up on account of her injuries for three months, and had not fully recovered at the time of the trial; that she was obliged to have help to care for her during the time, and that her doctor's bill was $187. The negligence relied upon was the sudden starting of the car, without any notice to her, as she was about to step to the ground. Defendant's counsel took part in the trial, but offered no testimony. The errors of which the plaintiff complains relate to the remarks of the court during the progress of the trial, the charge of the court, and the court's refusal to give his requests to charge.

The testimony disclosed that plaintiff was a seamstress, and that she gave "faith healing" treatments, and that she was on her way to see one of her patients when the accident occurred. While upon the witness stand she was cross-examined at a considerable length about her efforts at "faith healing." She testified that she and her brother and a 10-year old girl took a car and went to Delray about three o'clock in the morning, and there behind a billboard dug a hole. The cross-examination then proceeded as follows:

"*Q.* What did you do?

"*A.* I stood there and prayed while my brother dug hole.

"*Q.* What did you dig a hole for? (Objected to as incompetent and immaterial, inquiring into this woman's rites.)

" *The Court:* I do not think that is religion anyway; you may ask about it.

"*Q.* What did you dig a hole for?

"*A.* Because for woman that had been under operation, and she wanted to go back home to Cleveland, and she could not get out of bed, and I knew if I would do as I was told to do, I would have her strong enough to get out of bed and go home to Cleveland.

"*Q.* Who told you to do this?

"*A.* That is the angel.

"*Q.* What angel?

"*A.* Casimir. (Objected to, and I ask that it be stricken out.)

"*The Court:* I think that it has a direct bearing whether she is able to do what she says.

"*Mr. Van Dyke:* I want an exception to the court's ruling.

"*Q.* It is the Angel Casimir?

"*Mr. Van Dyke:* May all this be taken, subject to the objection and the exception?

"*The Court:* Certainly.

"*Q.* Does Angel Casimir live on this earth, or some other place?

"*A.* Lives with God in heaven.

"*Q.* And Angel Casimir told you to go down and dig a hole in Delray?

"*A.* Yes, sir.

"*Q.* What did you have the little child with you for?

"*A.* To pray."

The cross-examination proceeded further along these lines, when plaintiff's counsel again objected that the testimony was incompetent, irrelevant, and immaterial, " as it is part of her religious rites."

"*The Court:* I do not think this is religion; you cannot make this religion with me; it is too fakey. If that is religion, I don't want to hear anything more about it."

It is claimed that these remarks of the court were prejudicial to the plaintiff's case; that the result of such remarks was so stamp plaintiff as a religious fakir, and destroy her standing before the jury, and lead them to disbelieve her injuries, and doubt her loss on account of them.

We agree with counsel that the remarks of the court were harmful to the plaintiff's case. However absurd the plaintiff's acts and beliefs might appear to others, she was evidently sincere in them, and was entitled while in court to have them passed without question or comment, except so far as was necessary to show her physical condition and activity. We feel that something more than this

was done in plaintiff's examination. Her acts and beliefs were unduly developed and commented on in such a manner as to mitigate the damages, to which the testimony showed she was justly entitled. When one's peculiar religious views are made use of for this purpose and it is obvious, as it is here, that the use had the desired effect, the verdict ought to be set aside.

Plaintiff's counsel requested the court to charge upon the question of damages, as follows:

"I charge you that the amount of the damages which you must award the plaintiff must be for such a sum as will make her whole or compensate her for such injuries as you find she has, or will in the future suffer on account of the accident and negligence of the defendant."

The court refused this, and instead gave the following:

"I am unable to determine what sum you are to determine upon. That is entirely for the jury."

This has the merit of brevity, but not of sufficiency. It was the duty of the trial court to instruct the jury as to the law applicable to the case. 3 Comp. Laws, § 10243. A failure to do so is error. *Simons* v. *Haberkorn*, 139 Mich. 131 (102 N. W. 659).

Jurors are not supposed to know, without instruction, of the different elements of damage in a personal injury case, and it is the duty of the trial court to point out those elements on which a recovery may be had. This comes clearly within the duty enjoined upon him by the statute. In this instance the court not only failed to cover the question of damages in his general charge, but refused to give the unobjectionable request of counsel on that subject. We think the refusal of the trial court to give the request was error.

For the errors pointed out, the judgment is reversed, with costs of both courts, and a new trial ordered.

McAlvay, Brooke, Blair, and Stone, JJ., concurred.